UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>NISSAN NORTH AMERICA INC.;<br>NISSAN MOTOR CO., LTD.;<br>DENSO CORPORATION;<br>DENSO INTERNATIONAL<br>AMERICA, INC.,<br><br>  Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Affinity Labs of Texas, LLC ("Affinity Labs") for its causes of action against Defendants, Nissan North America Inc. and Nissan Motor Co., Ltd. (collectively, "Nissan") and Defendants Denso Corporation and Denso International America, Inc. (collectively, "Denso"), states and alleges on knowledge and information and belief as follows:

### PARTIES

1.  Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2.  On information and belief, Defendant Nissan North America, Inc. is a California corporation with its principal place of business located at 1 Nissan Way, Franklin, Tennessee, 37067.

3. On information and belief, Defendant Nissan Motor Co., Ltd., is a Japanese corporation with its headquarters located at 1–1, Takashima 1–chome, Nishi-ku, Yokohama-shi, Kanagawa 220–8686, Japan.

4. On information and belief, Defendant Denso Corporation is a Japanese corporation with its headquarters at 1–1, Showa-cho, Kariya, Aichi 448–8661, Japan.

5. On information and belief, Defendant Denso International America, Inc. is a Delaware corporation with a place of business at 24777 Denso Dr., Southfield, MI 48033–5244. On information and belief, Denso International America, Inc. may be served via its registered agent, Corporation Service Company d/b/a CSC Lawyers Incorporating Company, which has an address at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281–285.

7. This Court has personal jurisdiction over Defendants. Upon information and belief, Defendants have committed and continue to commit acts giving rise to this action within Texas and within this judicial district and Defendants have established minimum contacts within the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. For example, Defendants have committed and/or contributed to and continue to commit and/or contribute to acts of patent infringement in this judicial district. In conducting business in Texas and this judicial district, Defendants derive substantial revenue from infringing products being sold, used, imported, and/or offered for sale.

## **VENUE**

8.      Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants have committed acts within this judicial district giving rise to this action, and Defendants have and continue to conduct business in this judicial district, including one or more acts of selling, using, importing, and/or offering for sale infringing products or providing service and support to Defendants' customers in this District.

9.      Venue in the Eastern District of Texas is further proper because Affinity Labs is headquartered in Dripping Springs, Texas.

10.     Venue in the Eastern District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

11.     Venue in the Eastern District of Texas is also proper because of judicial economy. Judge Ron Clark presided over *Affinity Labs of Texas, LLC v. BMW North America, LLC, et al.*, Civil Action No. 9:08–cv-164. That case included claims by Affinity Labs against Nissan North America, Inc. As part of that action the Court construed claims of the same patent asserted in the present action, U.S. Patent No. 7,324,833, in the Order Construing Claim Terms dated December 18, 2009 (Dkt. No. 326). Furthermore, Judge Ron Clark presided over *Affinity Labs of Texas, LLC v. Ford Motor Co.*, Civil Action No. 1:12–cv-00580–RC, *Affinity Labs of Texas, LLC v. General Motors Co.*, Civil Action No. 1:12–cv-00582–RC, and *Affinity Labs of Texas, LLC v. Samsung et al.*, Civil Action No. 1:12–cv-00557–RC. As part of those actions the Court construed claims of the same patent asserted in the present action, U.S. Patent No. 7,324,833, in the Orders Construing Claim Terms dated June 4, 2014

(*Samsung et al.* Dkt. No. 186), April 16, 2014 (*Ford* Dkt. No. 91), and April 16, 2014 (*GM* Dkt. No. 107).

12. Joinder of the Defendants is proper pursuant to 35 U.S.C. § 299(a) at least because Defendants' infringing acts arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process. For example, upon information and belief Defendant Denso provides Defendant Nissan with an in-vehicle infotainment (IVI) system—the use of which by Nissan has directly infringed and is directly infringing the Asserted Patent in this matter, U.S. Patent No. 7,324,833. In addition, questions of fact common to all of the Defendants will arise in the action at least because, upon information and belief, Defendants' infringing acts arise from their common acts of using Denso's in-vehicle infotainment (IVI) system.

## BACKGROUND

### Affinity Labs

13. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

14. Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

15. Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas A&M. Mr. White also graduated from the University of Temple Law School. After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

16. Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least thirty-two separate United States patents.

17. On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 ("the '812 application") with the United States Patent and Trademark Office ("PTO").

18. The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device such as a smartphone at its center.

19. The '812 application also disclosed the ability to download music and playlists from an online store, or stream Internet radio, to the portable electronic device, and then connect the device to a second device such as an automobile with a display. As disclosed in the '812 application, the music available on the portable device can then be displayed and selected using controls on an automobile stereo system, and played through the speakers.

20. Mr. White and Mr. Imes made this disclosure in the '812 application over a year before the iPod was released in October 2001, approximately 3 years before the iTunes Store sold its first song, 7 years before the first iPhone was sold, 8 years before the App Store was launched, and 8 years before the functionality of having the music available on a portable device be displayed and selected using controls on an automobile stereo system and played through the speakers was available using an iPhone and some luxury vehicles. This same connective functionality did not become available on Android phones until more than 9 years after Mr. White and Mr. Imes filed the '812 application.

21. On January 29, 2008, the PTO issued United States Patent No. 7,324,833, entitled "System and Method for Connecting a Portable Audio Player to an Automobile Sound System" ("the '833 patent"), a copy of which is attached as Exhibit A. The '833 patent was issued from a continuation application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000 and issued on March 6, 2007 as United States Patent No. 7,187,947 entitled "System and Method for Communicating Selected Information to an Electronic Device."

22. The '833 patent ("the Asserted Patent") and other patents in the same patent family, have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.

23. Affinity Labs holds legal title, by assignment, to the Asserted Patent.

### *Affinity Labs of Texas, LLC v. BMW N. Am., LLC, et al.*

24. On August 27, 2008, Affinity Labs sued a number of defendants, including Hyundai Motor America, Inc.; Hyundai Motor Manufacturing Alabama, LLC (collectively, "Hyundai"); Kia Motors America, Inc. ("Kia"); and Volkswagen Group of America ("Volkswagen") in the Eastern District of Texas for patent infringement, including infringement of the Asserted Patent. Affinity Labs alleged that Hyundai, Kia, and Volkswagen infringed the '833 patent by manufacturing, using, marketing, offering for sale, and/or selling of select automobiles with audio systems designed to integrate a portable digital media device with the automobile's on-screen display and user interface.

25. The Court, the Honorable Ron Clark presiding, held a jury trial from October 18–22 and October 25–28, 2010 with defendants Hyundai, Kia, and Volkswagen.

26.     During the trial Hyundai, Kia, and Volkswagen asserted that claims 28 and 35 of the ´833 patent were invalid under 35 U.S.C. sections 102, 103 and/or 112.

27.     On October 28, 2010, the jury by unanimous verdict found that Volkswagen and Hyundai directly and contributorily infringed and induced infringement of claims 28 and 35 of the ´833 patent. The jury awarded damages to Affinity Labs in the amount of $12,986,530.

28.     The jury rejected all of Volkswagen, Hyundai, and Kia's invalidity arguments and found that claims 28 and 35 of the '833 patent are not invalid.

29.     The jury also found that claims 28 and 35 of the ´833 patent are not anticipated, and that claims 28 and 35 of the ´833 patent are not obvious.

30.     On April 12, 2011, the Court ordered final judgment in favor of Affinity Labs in the amount of $12,986,530 in damages, $1,193,130 in pre-judgment interest, post-judgment interest calculated at the rate of 0.27%, and costs of court.

### *Affinity Labs of Texas, LLC v. Nissan et al.*

31.     On August 27, 2008, Affinity Labs filed a Complaint in the Eastern District of Texas against Nissan North America Inc., Case No. 9:08-cv-164 (RC), for alleged infringement of the '833 patent based on the manufacture and sale of certain Nissan and Infiniti branded automobiles.

32.     To resolve that litigation, Affinity Labs entered into an agreement with Nissan. Under the Agreement, Affinity Labs expressly maintained all rights to sue Nissan for use of an unlicensed manufacturer or supplier for any allegedly infringing automobiles in the future, as long as Affinity Labs joined the unlicensed manufacturer or supplier in the lawsuit:

>If Nissan and/or a parent/subsidiary/affiliate of Nissan uses an unlicensed manufacturer or supplier for any allegedly infringing automobiles in the future (other than the automobiles referenced in paragraph (h) above), and if Affinity files a lawsuit against Nissan alleging that such automobiles infringe the '833 Patent or the '926 Patent, then Affinity, as a condition for bringing any lawsuit against Nissan and/or a parent/subsidiary/affiliate of Nissan based upon Nissan and/or a parent/subsidiary/affiliate of Nissan's use of an unlicensed manufacturer or supplier, must join in that lawsuit and not dismiss from that lawsuit such unlicensed manufacturer or supplier until such time as that lawsuit reaches its final resolution with respect to products sold to Nissan and/or a parent/subsidiary/affiliate of Nissan by the unlicensed manufacturer or supplier either through exhaustion of the judicial process or settlement.

Exhibit B, ¶ 3.

33. Upon information and belief, defendant Denso manufactures, uses, sells, offers to sell, markets, imports, has manufactured, used, sold, offered to sell, marketed, and/or imported products that contributorily infringe or have contributorily infringed the '833 patent, including but not limited to Denso's customer Nissan.

34. Denso does not have a license or permission to use the claimed subject matter in the '833 patent.

35. As a result, Affinity Labs brings this action to seek damages and injunctive relief arising out of Denso and Nissan's infringing acts.

## COUNT I

### Infringement of U.S. Patent No. 7,324,833 by Nissan

36. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

37. On information and belief, Nissan manufactures, uses, sells, offers to sell, markets, imports, has manufactured, used, sold, offered to sell, marketed, and/or imported products that infringe or have infringed the '833 patent.

38. As a result, Affinity Labs brings this action to seek damages and injunctive relief arising out of Nissan's infringing acts.

39. Upon information and belief, in violation of 35 U.S.C. § 271(a), Nissan has infringed, and if not enjoined, will continue to infringe the '833 patent by (1) manufacturing, using, marketing, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '833 patent, literally and/or under the doctrine of equivalents; (2) inducing infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(b); and/or (3) contributing to the infringement of one or more claims of the '833 patent, in violation of 35 U.S.C. § 271(c). In particular, Nissan infringes one or more claims of the '833 patent directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Nissan automobiles with sound systems, including at least, for example, the Infiniti Q50; and (2) using Nissan automobiles with sound systems, including at least, for example, the Infiniti Q50, as part of the audio system and methods claimed in the '833 patent.

40. Also on information and belief, Nissan markets and sells Nissan automobiles with sound systems, including at least, for example, the Infiniti Q50. Nissan markets and sells its Nissan automobiles with sound systems to customers and potential customers that include, for example, dealerships and other companies in the vehicle industry in the United States, in addition to individual customers in the United States.

41. Nissan had actual knowledge of the '833 patent since at least the filing date (August 27, 2008) and/or service date (September 18, 2008) of the Complaint in *Affinity Labs of Texas, LLC v. Nissan et al.*, Case No. 6:13–cv-369 (E.D. Tex.).

42. In addition, on information and belief, Nissan has actively induced and is actively inducing others, such as Nissan's customers, to directly infringe the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b). For example, on information and belief, Nissan and/or its distributors or representatives have sold or otherwise provided Nissan automobiles with sound systems—including at least, for example, the Infiniti Q50—to third parties, such as Nissan's customers. Through its website, user manuals, advertising, and sales personnel, Nissan markets and promotes the use of Nissan's automobiles with sound systems—including at least, for example, the Infiniti Q50—that is able to connect with a portable electronic device, such as an MP3 player or smartphone, to infringe the '833 patent when they are used as Nissan intends by its customers and end-users. Nissan further instructs its customers and end-users how to use such products in a manner that infringes the '833 patent claims. As an example, through its website located at http://www.infinitiusa.com, Nissan instructs downstream customers concerning the use of its automobile sound systems that are able to connect with a portable electronic device, such as an MP3 player or smartphone, which infringes claims of the '833 patent. Nissan also instructs its customers and end-users to infringe the '833 patent claims through the products themselves, for example, through on-screen instructions, intuitive user interfaces, and command prompts. Not by way of limitation, Nissan specifically instructs its customers and end-users regarding use of the USB port for compatible devices to create a direct connection between their customers' portable electronic device, such as an MP3 player or smartphone, and Nissan's audio sound system, including for the purposes of playing music on the Nissan automobiles' audio sound system. Nissan induces this direct

infringement by advertising and instructing its customers and end-users to use its audio sound systems in a manner which infringes claims of the '833 patent.

43. On information and belief, Nissan, with actual knowledge of the '833 patent, actively contributed to the infringement and actively continues to commit such contributory infringement of the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(c). For example, on information and belief, Nissan has contributed to and is contributing to infringement of the '833 patent through the manufacture, use, marketing of, sale, offer for sale, and/or importation of Nissan automobiles with sound systems, including at least, for example, the Infiniti Q50—the use of which by Nissan's customers has directly infringed and is directly infringing the '833 patent.

44. Upon information and belief, Nissan's automobiles with sound systems, such as the Infiniti Q50, include for example, the ability to connect with a portable device, such as a smartphone, which constitutes a material part of the inventions claimed in the '833 patent, and has no substantially non-infringing uses.

45. Nissan does not have a license or permission to use the claimed subject matter in the '833 patent with an unlicensed supplier or manufacturer.

46. Upon information and belief, Nissan's infringement of the '833 patent has been, and continues to be willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '833 patent and thus acting in reckless disregard of Affinity Labs' patent rights.

47. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Nissan's infringement of the '833 patent.

48.     Nissan will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

49.     Affinity Labs is entitled to recover from Nissan the damages sustained by Affinity Labs as a result of Nissan's wrongful acts in an amount subject to proof at trial.

## COUNT II

### Contributory Infringement of U.S. Patent No. 7,324,833 by Denso

50.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

51.     Denso had actual knowledge of the '833 patent since at least the filing date and/or service of this Complaint.

52.     On information and belief, Denso, with actual knowledge of the '833 patent, actively contributed to the infringement and actively continues to commit such contributory infringement of the '833 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(c). For example, on information and belief, Denso has contributed to and is contributing to infringement of the '833 patent by selling an in-vehicle infotainment (IVI) system to its customers, including but not limited to Nissan, the use of which by Denso's customers has directly infringed and is directly infringing the '833 patent.

53.     Upon information and belief, at least Denso's in-vehicle infotainment (IVI) system, including for example, the ability to connect with a portable device, such as a smartphone, constitutes a material part of the inventions claimed in the ´833 patent, and has no substantially non-infringing uses.

54. Denso's actions of, inter alia, making, importing, using, offering for sale, and/or selling such products constitutes infringement of the ´833 patent, which was duly issued by the United States Patent and Trademark Office and is presumed valid.

55. Denso continues to specifically intend for and encourage its customers and end-users to use its products in a manner that directly infringes the claims of the ´833 patent.

56. Denso has been aware since at least of the filing of this Complaint that its actions constitute infringement of the '833 patent, and that the '833 patent is valid. Despite Denso's knowledge, on information and belief, Denso has not made any changes, to date, to the functionality, operations, marketing, advertising, sales, or technical support for the relevant operation of its accused products, and has not provided its users and/or customers with instructions on how to avoid infringement of the '833 patent. Instead, Denso has continued to, and still is continuing to, make, use, offer for sale, and/or sell accused products that when used as Denso specifically instructs and intends, practice claims of the '833 patent.

57. Denso does not have a license or permission to use the claimed subject matter in the '833 patent.

58. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Denso's infringement of the '833 patent.

59. Denso will continue to infringe the '833 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

60. Affinity Labs is entitled to recover from Denso the damages sustained by Affinity Labs as a result of Denso's wrongful acts in an amount subject to proof at trial.

## **DEMAND FOR TRIAL BY JURY**

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Affinity Labs prays for the following relief:

1. A declaration that Nissan has infringed and is infringing the '833 patent and is liable to Affinity Labs for infringement;

2. A declaration that Denso has contributorily infringed the '833 patent and is liable to Affinity Labs for infringement;

3. An order enjoining Nissan and Denso from infringing the '833 patent;

4. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing compulsory license or such other relief as the Court deems appropriate;

5. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for Nissan and Denso's infringement of the '833 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

6. An equitable accounting of damages owed by Nissan and Denso for the period of infringement of the '833 patent, following the period of damages established by Affinity Labs at trial;

7. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

8. An award of costs, expenses, and disbursements; and

9. Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated: <u>October 8, 2014</u>　　　　　　　　　Respectfully submitted,

By: <u>*/s/ Charles W. Goehringer, Jr.*</u>

**Germer P.L.L.C.**
Lawrence Louis Germer
(TX Bar # 07824000)
Charles W. Goehringer, Jr.
(TX Bar # 00793817)
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas 77701
Telephone: (409) 654–6700
Fax: (409) 835–2115
llgermer@germer.com
cwgoehringer@germer.com

**Robins, Kaplan, Miller & Ciresi L.L.P.**
Ronald J. Schutz (MN Bar No. 130849)
(Eastern District of Texas Member) (Lead Counsel)
Cyrus A. Morton (MN Bar No. 287325)
(Eastern District of Texas Member)
Daniel R. Burgess (MN Bar No. 389976)
(Eastern District of Texas Member)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine A. Tietz (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349–8500
Facsimile: (612) 339–4181
RJSchutz@rkmc.com
CAMorton@rkmc.com
DRBurgess@rkmc.com
STShapiro@rkmc.com
KATietz@rkmc.com

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2014, I caused a true and correct copy of this document (Complaint for Patent Infringement) to be served on all counsel of record via Electronic Case Filing (ECF) pursuant to Local Rule CV-5(a).

Dated: <u>October 8, 2014</u>                             <u>/s/ Charles W. Goehringer, Jr.</u>
                                                          Charles W. Goehringer, Jr.